PETER J. SWEENEY, CLAIMANT-APPELLANT, v. BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY AND BREYER ICE CREAM DIVISION OF NATIONAL DAIRY PRODUCTS, RESPONDENTS-RE-SPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 7, 1963—Decided November 1, 1963.

Before Judges CONFORD, FREUND and SULLIVAN.

*Mr. Thomas G. Bernard* argued the cause for appellant (*Messrs. Bernard & Bernard,* attorneys).

*Mr. Edward A. Kaplan* argued the cause for respondent Board of Review, Division of Employment Security, Department of Labor and Industry, State of New Jersey.

The opinion of the court was delivered by

FREUND, J. A. D. This is an appeal from a determination of the Board of Review that Peter J. Sweeney was required to refund $450 paid to him as unemployment benefits.

Sweeney was a member of the International Brotherhood of Teamsters Union Local 680 and was employed in the production department of the Breyer Ice Cream Division of the National Dairy Products Corporation (Breyer). Local 680 was working under an existing collective bargaining agreement which expired April 30, 1962.

On March 2, 1962 Breyer posted a notice at its Newark plant stating that all manufacturing operations in the production department at that plant would be discontinued due to economic conditions, and that a layoff of all employees of the production department would commence March 31, 1962. About the middle of the month negotiations for a new collective bargaining agreement began between a bargaining unit representing Teamsters Union Locals 338, 680 and 757, and a committee representing Breyer and other New Jersey and Greater New York employers in the ice cream business.

Local 680 objected strenuously to Breyer's plans to close the production department at the Newark plant, a procedure which would then involve the bringing in of ice cream from other areas. Two of the major issues in these negotiations were the union's objection to the closing of the production department and its demand for a guarantee of employment for all employees for the ensuing three years irrespective of the volume of business. The union also warned that it would call a strike against the entire Newark plant for violation of the collective bargaining contract if the production department were closed.

As a result of negotiations involving these matters the notice posted on March 2, 1962 was rescinded and a new notice was posted changing the date of the closing of the production department and layoffs to April 27, 1962. For the same reasons this notice was rescinded a few days before it was to become effective and a third notice was posted which stated that the manufacturing operations in the production department would cease on May 4, 1962, and that the production employees would be laid off on that date.

The president of Local 680 notified Breyer's bargaining agent that there would be no settlement of the labor dispute unless the production department at the Newark plant continued to operate. No new collective bargaining agreement could be reached by the expiration date of the existing agreement, and a strike was called by Local 757 on May 1, 1962 against one of the Greater New York employers.

On May 2, 1962 Breyer closed its entire Newark plant and locked out all of its employees. George W. May, general manager of the Breyer Ice Cream Division and one of the negotiators for the employers, testified to the reasons for that decision:

> "[I]n view of the fact that Local 757 had struck one plant and went on notice that it would be in their interest to strike one or more plants, whenever they saw fit, we decided to shut down all the plants because of the perishable products. We had milk, we had cream sitting around the streets, and it would be silly to receive this with no guarantee of the employees going to work."

On May 3, 1962 appellant filed a claim for unemployment benefits, stating therein that the last day he worked was May 1, 1962 and that he was not working because of an economic layoff. Appellant received benefits of $50 per week for a period of nine weeks, totalling $450. It is to be noted, however, that on May 7, 1962 the employer, in response to a request for information by the Division of Employment Security, reported that appellant's unemployment was due to an industrial dispute at the establishment in which he was employed.

On July 3, 1962 a new collective bargaining agreement was reached, and ratified by the three locals. On July 9 the entire Newark plant was reopened. All employees, including the appellant, returned to work and all departments in the plant resumed operations.

On September 21, 1962 the Chief of Unemployment Benefits notified appellant that his unemployment was due to a stoppage of work caused by a labor dispute, which disqualified him for benefits. A refund of the $450 paid was demanded, a determination which Sweeney unsuccessfully appealed at hearings before the Appeal Tribunal and the Board of Review, respectively.

*N. J. S. A.* 43:21-5 reads in part as follows:

> "An individual shall be disqualified for benefits:
> *       *       *       *       *       *       *       *

(d) For any week with respect to which it is found that his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed * * *."

Appellant contends that the foregoing statutory provision is not, as the Appeal Tribunal and Board of Review held, dispositive of his claim. He argues that since the third notice posted by Breyer, indicating that there would be a layoff on May 4, 1962, was never rescinded, his unemployment is due to that proposed layoff, notwithstanding the fact that he concedes a lockout occurred on May 2, 1962, following a strike called on the previous day against one of the Greater New York employers. He contends that under the rationale of *Great A. & P. Tea Co. v. New Jersey Dept. of Labor and Industry, Div. of Unemployment Comp.*, 29 N. J. Super. 26 (*App. Div.* 1953), he is entitled to unemployment benefits commencing May 4, 1962. In that case a work stoppage caused by a labor dispute was followed by the employer's decision to abandon not only negotiations but the entire business operation. It was held that such permanent abandonment of business ended the work stoppage and therefore entitled the employees to unemployment benefits.

Breyer's lockout cannot be viewed, as appellant suggests, as the legal equivalent of the termination of all operations. Such a position is contrary to the facts. It is clear also that the reason for the second and third notices posted by Breyer, each putting off the date of the proposed layoff, was the union's objection to that proposed layoff. This had become an issue during the course of bargaining. The lockout, coming in the midst of these bargaining sessions, was prompted not by the economic conditions mentioned in the original notice, but rather to prevent spoilage of materials in the event of a sudden walkout by the union. There can be no doubt that a lockout constitutes a "stoppage of work which exists because of a labor dispute" within the meaning of N. J. S. A. 43:21-5(d). *Schoenwiesner v. Board of Review, Division of Employment Security*, 44 N. J. Super. 377, 378 (*App.*

*Div.* 1957). See generally Annotation, 28 *A. L. R.* 2*d* 287, 312–315 (1953). We conclude, therefore, that appellant does fall within the purview of that statutory provision and that the decision of the Board of Review requiring his return of unemployment benefits received was correct.

■ Appellant argues that Breyer is estopped from asserting that he, as one of its employees, was involved in a "labor dispute" because it had already notified him that he would be laid off. But the company's postponing the date of layoff and then effecting a lockout were not inconsistent. Both of these actions occurred in the course of and by reason of its bargaining sessions with the unions.

■ Appellant was charged $21 by the Division for a transcript of the proceedings before the Board of Review, which he paid under protest. He required this transcript in order to comply with *R. R.* 4:88–8, specifying the procedure for appeal to this court from the final action of an administrative agency. That rule provides that an appellant shall furnish and send to this court a transcript of the testimony where a stenographic report of the testimony has been taken before the agency. It has been the practice on appeals such as these for the claimant to pay a nominal sum per page for a transcript of the proceedings below. Such transcripts are prepared by salaried employees of the Division of Employment Security without any out-of-pocket expense to the Division. However, no appellant has heretofore argued that such practice was contrary to statute. Appellant contends that the charge for the transcript violated *R. S.* 43:21–15(b), which provides in part as follows: "No individual claiming benefits shall be charged fees of any kind in any proceeding under this chapter by the commission or its representatives or by any court or any officer thereof."

We agree that this language manifests a broad intent on the part of the Legislature in favor of relief of claimants from undue expense of litigation in these matters. That intent further appears from the provision in the section cited that the Board of Review approve any charges for services to

claimant by counsel, and from *N. J. S. A.* 43:21–6(g), which states: "Witnesses subpoenaed pursuant to this section shall be allowed fees at a rate fixed by the director. Such fees and *all expenses* of proceedings involving disputed claims shall be deemed a part of the expense of administering this chapter." (Emphasis added)

The Board of Review argues that the fees here exacted of the appellant were not charged in a "proceeding under this chapter" and were therefore not literally prohibited by the statute. However, the statutory provision also prohibits a charge by any court. The combined effect of *R. R.* 4:88–8 and the agency practice is thus seen to result in the appellant's being charged a fee in order to secure appellate review of his claim. This is plainly contrary to the legislative intent. As manifested by the rationale and purposes of the statute, such intent is controlling against a narrow, literal reading of isolated segments of the legislative language. *Alexander v. New Jersey Power & Light Co.*, 21 *N. J.* 373, 378–79 (1956).

Accordingly, from all of the foregoing we find that a claimant-appellant in proceedings such as these is to be furnished with a copy of the transcript without charge. Appellant is therefore entitled to a refund of the $21 he paid to the Division for that transcript.

Affirmed as modified.